And we'll hear counsel in the United States v. Beauvais or Larson. Mr. Mahoney. May it please the court. Good morning, your honors. I'm Mark Mahoney. I am here today to discuss the case of the high amendment claim for attorneys fees and expenses subsequent to his acquittal in a very long labor racketeering case which occurred in 2014. Bad faith, frivolousness, facetiousness, either one of these could be a ground for granting relief under the Hyde Amendment. This case rings the bell on all three of these issues. The bad faith itself could be easily established from the fact that when the government presented this matter to the grand jury in 2007, which was four years following the events, they had no evidence whatsoever that Mr. Beauvais had done anything inappropriate. The particular area that was in question was property damage to heavy equipment at the Marcy Excavations Project at a landfill near Buffalo. And that damage had occurred shortly after, within a couple of weeks or a week after a meeting that Mr. Beauvais, who was the business manager for the union, had met with Mr. Hale, who was the president of Marcy Excavation, and his associate, Mr. Mazur. Mr. Beauvais' job was to persuade him to have them sign a collective bargain agreement with the union, a pre-hire agreement in the construction trades. At that time, Mr. Hale and Mr. Mazur both indicated that this meeting had occurred and that what Mr. Hale said was that Mr. Beauvais said if they didn't sign this agreement, then other contractors had been picketed. Mr. Hale said that to the state police. He also said it in a sworn affidavit for the NLRB. Obviously, this is exculpatory because it would be perfectly appropriate for Mr. Beauvais to threaten picketing if the company refused to sign. So that condition lasted for several years until a month before the grand jury presentation when investigators and an assistant U.S. attorney confirmed that Mr. Hale's testimony was the same. All that Mr. Beauvais had, quote, threatened, if you will, would be that the union would So then what happens at the grand jury, a month later after the investigators confirmed with Hale what his testimony was, all of a sudden Mr. Hale tells the grand jury that Mr. Beauvais said that contractors who had not signed the agreement with the union had had their property damaged. First time this came up, nobody had reviewed with him his was not challenged as to how he could have such a radical change in thought when his contemporaneous views were very, very clear. You mean he was not challenged in the grand jury? In the grand jury or outside the grand jury by the prosecutor. Nobody vetted this, as far as we know. And Judge Scrutiny refused to conduct a hearing on this question ever at the time we first discovered it, which was after the trial began, and we'll talk about that, but also in connection with the Hyde Amendment claim. It was never, so what's the job of the prosecutor in this situation? Mr. Bruce, who was the prosecutor at the trial, did an affidavit in response to our claim. He never suggested that there was any reason to believe Hale's testimony at the grand jury, which he then presented at the trial as well, exactly in that same fashion. Can I just ask, so the witness says something for the first time in the grand jury, that's not, help me understand why this is an adequate basis to infer bad faith or frivolousness, the demanding standard of the statute, because as you know, witnesses do add to, subtract from stories that they tell multiple times. That's why lawyers cross-examine with prior inconsistent statements. So what's the basis here for inferring? Well, first of all, Mr. Hale was highly motivated in May 7th, shortly after the day the damage was discovered, to tell anything about people he suspected. He gave names of suspects to the state police investigator. He didn't mention anything about Mr. Beauvais. He didn't mention anything about any threats. A few days later, to another state police investigator, both these individuals testified, we have written statements, said that Mr. Beauvais specifically said with respect to what Beauvais said about contractors who had not signed with the union, that what Mr. Beauvais said was that they would be picketed. Specifically said that. He reaffirmed that exact same phraseology later in an NLRB affidavit. He was highly motivated at that time. If there was anything suspicious about Beauvais or anything threatening about what Mr. Beauvais had said, who is a representative of the union, which he is very sure the statement of the NLRB is a sworn statement. Plus, there is no explanation. He is not saying, oh, you know, I just, this thought came to me, I realized I was mistaken in talking to the state police. The prosecutors never challenged him. They never, if it was on the up and up, they would have let the grand jury know he had made these prior statements before and let the grand jury decide. This is the problem, this is the essence of the problem under- There's no, as you know, there's no obligation to present exculpatory material to the grand jury. No, but under Mooney, under Nepew, where what the prosecutor knows is information which actually contradicts that person's testimony. Then he's misleading the grand jury. This isn't a question of, there's an alternative theory of innocence that the prosecutor isn't presenting. This is a witness who's saying now he threatened me when previously and contemporaneously said no, there wasn't a threat, and that is misleading. That is not a question of exculpatory evidence. That's a problem of presenting a witness for whom you have no reason to believe they're telling the truth. And by the way, neither then, nor when this was challenged when we discovered after the beginning of the trial, neither in response to our motions at that time, nor in response to the Hyde Amendment claim, did Mr. Bruce ever say I believed Hale's grand jury testimony. I had some reason to believe that. It's not there. The judge Scretton never even addressed this issue. The government doesn't address this side. So I would say, contextually, not only is it the fact of what happened, but that they're even silent about it. Nobody's, and I guess to the infinitesimal credit of Mr. Bruce, he wouldn't dare to come forth and say he believed it, because who could? Who, if this was switched around, if Mr. Hale was on trial for perjury? And I think nobody would ask the question, well, you know, what grounds there would have been to find him being perjurious in his grand jury testimony? It's very, it's the kind of, it's too clear. It's just too clear. Plus, contextually, the government doesn't deny it. The government offers no reason to believe that testimony. No excuse for offering it. So I think that that's, so that's the beginning of it. But I think that this is bolstered again, the bad faith is bolstered by what happened after this. So after the grand jury hears that testimony, the government does not put that particular evidence into the indictment, or the superseding indictment, or the second superseding indictment. So there's nothing in the indictment that suggests that Beauvais had threatened Mr. Hale back in 2007. It's scrubbed of that. So in the discovery, we're not given any record of that information. We get to the point, for years I was saying to Judge Scredny, Mr. Beauvais is innocent. The indictment doesn't tell us he did anything wrong. The discovery doesn't. So we need particularization. What is it that he did that's wrong? We should be entitled to know. The government said in response that everything that Mr. Beauvais needs to know, all the details of what he said to Mr. Hale, which we didn't even really think there was anything significant about the Hale meeting, are in the affidavit in the NLRB, which is exculpatory. On that basis, Judge Scredny denied particularization, and then we marched toward trial. So the government's covering it up. Then there's a pretrial disclosure order regarding prior statements. And the government asked the judge to make an exception for any witnesses who might feel threatened by the defendants, and not disclose their 500 material until like three days before they testify. But Judge Scredny said, but if you're going to do that by December 16th, this is 2013, just before the trial, you have to confirm with each witness whether they really feel threatened. Now why would Hale feel threatened? We have statements by him to the state police and to the NLRB where he says nothing incriminatory. So why would he feel threatened by us? Well, it turns out Mr. Bruce violated that order, disobeyed that Mr. Hale to confirm this, and yet kept that secret still. So that prior to trial, we had no notice of this claim. And I've said that's for the purpose of making sure we could not raise this in a motion to dismiss prior to trial, and that I would not be able to open to the jury on this issue. The government has never denied that. Mr. Bruce never denied that. There's no excuse offered for that. So that cover-up, I think, shows the consciousness of wrongdoing, that confirms the bad faith, and the idea to get the most advantage as they could out of this. And bear in mind, the interesting thing is, this is the only evidence they have that shows that Mr., from which you can infer culpability on part of Mr. Obey. And Mr. Bruce and the government does not even open on that issue, just to preserve the surprise value of it. In other words, this is evidence which is so lacking in credibility by the government, that it doesn't have enough probative value to say in the opening statement, because it would be attacked. And it's only value is if they can surprise us later on at trial. Thanks, Mr. Mahoney, very much. You've reserved some time. Good morning, Your Honor. May it please the Court? Your Honors, my name is Mary Pat Fleming, and I represent the appellee, United States of America, in this matter. The District Court's decision denying Mr. Bovey's Hyde Amendment application should be affirmed. This Court has not yet decided what standard of review should be applied in these circumstances. We would suggest an urge to the Court that an abuse of discretion standard apply, that you follow the other circuit courts of appeal. The District Court judge had the best opportunity to evaluate the credibility of the witnesses and to assess the evidence. Therefore, it is our contention that an abuse of discretion standard should apply. Mr. Bovey's counsel suggests that a de novo standard should apply. We contend that he is mistaken. He has not used case law to support that. But under either standard, the District Court decision should be affirmed. Could you address some of the substantive matters raised by your adversary in terms of noncompliance with the Court's order and so on? The arguments that Mr. Bovey makes here today, this was a hard-fought trial. There were multiple motions that were made to dismiss the indictment, to preclude witness testimony, and for acquittal. At every step of the way, Judge Scretany denied those motions. Motions to reconsider were also filed. So Judge Scretany looked very carefully at both the legal and the factual basis for the claims in this matter and denied Mr. Bovey's arguments every step of the way. There was a specific motion to preclude that was made with respect to Mr. Hale's testimony. That motion was denied. Judge Scretany ruled that the testimony was not provided in violation of his disclosure order, that it was provided in a timely fashion. He also determined that the testimony was not inherently unreliable and that it should be a matter for the jury to decide and to weigh itself. So I would suggest to the Court that this issue was raised not once but twice before Judge Scretany, and he clearly came down in favor of the prosecution and the testimony being evaluated by the jury at the time. Now, Mr. Bovey was given very good representation at the trial, and he was acquitted at the end of the trial. All of the arguments that Mr. Mahoney is making today are arguments that support his acquittal. However, they do not support a Hyde Amendment application. The burden in a Hyde Amendment application is so high, Mr. Bovey would have to provide proof that the prosecution committed misconduct, and not only misconduct, but misconduct in the extreme. One of his arguments is that your legal theory, the government's legal theory, was not sustainable and that should have been obvious and became very clear over time. And part of your response, as I understand it, is that this wasn't the decision of one prosecutor, but that the legal theory had been vetted by others in the Department. And I wonder what weight we ought to assign that. Shouldn't we apply an objective standard rather than a kind of, you know, who else looked at it kind of standard to determining whether it was a sustainable legal theory or one that was so marginal as to perhaps reflect an intention to, a subjective intention to go after this defendant? Well, Your Honor, with respect to the legal theory, prior to trial starting, the defendants filed a motion to dismiss the indictment, relying upon the Secker case, or the Edmonds case, first of all, Your Honor, and that Judge Scretany decided that the legal theory was supported by the Edmonds case. A motion for reconsideration was then filed, and again, Judge Scretany decided that the indictment was sufficient and was sustainable. Trial then begins. Another round of motions is filed based upon, at this point, Secker, the case Secker. Again, Judge Scretany ruled that the evidence was sufficient. Again, a motion to reconsider was filed, and Judge Scretany again ruled that the indictment was sufficient and the case could proceed. Again, Rule 29 at the close of proof was filed. Judge Scretany, Your Honor, I would suggest to the court that because of this hard fought litigation, and because of these rulings, this is not a case where the prosecution is out on a limb. The prosecution does not have legal authority to support its case. Judge Scretany's rulings apply an objective standard, or reflect the application of objective standard that they were adequately meritorious. Absolutely. There is no proof whatsoever here that there was any prosecutorial misconduct, let alone an intent to harass Mr. Bove, or an intent to be malicious with respect to this, to annoy or embarrass him. One of your adversary's arguments is that the change in Mr. Hale's testimony, that it was only before the grand jury that there's really a portion of his testimony that directly incriminates Mr. Bove, specifically includes a portion of the conversation where there's a threat made at the diner, and that we should infer from that that the prosecutors were acting in bad faith in proceeding because they should have raised this with the witness and they shouldn't have put the witness on the stand, essentially. Your Honor, as you pointed out correctly, that the prosecution has no obligation to present exculpatory evidence during a grand jury proceeding, if this is indeed viewed as exculpatory evidence. So I would suggest to the court that there was no obligation at the grand jury stage. And again, I would refer the court to Judge... That wouldn't necessarily obviate a bad faith claim on the part of the appellant here. They may not have had a constitutional obligation to develop exculpatory evidence in the grand jury, but they're not permitted to put on evidence that they have a basis for believing is not accurate, not true. Mr. Mahoney argued that Mr. Bruce never said, I believed Mr. Hill's testimony. That is a far cry from somebody who... Proof that is required that Mr. Bruce brought this prosecution to embarrass, to annoy with ill content or ill... With moral obliquity, Your Honor. The standard is so high, the fact that Mr. Bruce never affirmatively said, I believe Mr. Hill's testimony, which I don't think he was obligated to do in the first instance, falls far short from showing that this... Demonstrating that this prosecution was done in the manner that the Hyde Amendment requires. Should we attach any importance to the government's decision to dismiss Racketeering Act 7 at trial? That was the Spicer extortion, I guess. Your Honor, I would suggest to the court that that shows that we were not... We did not... That we made the decision that the proof did not warrant this count to be brought. And it shows... At what stage was that dismissed? I believe, Your Honor, it was dismissed at the close of the government proof. Not so early. No, not so early. But I could be mistaken. I wasn't at the trial, Your Honor, but I believe that was the case. However, again, I would urge the court that that shows that the government was acting appropriately. That the government was not out to embarrass, annoy, or harass Mr. Beauvais by this prosecution. It was doing what it should have done, which is evaluate the evidence and make a determination that one count should be dismissed voluntarily when the proof did not sustain it. So this is an incredibly high burden. Mr. Beauvais needs to carry that burden. And I would suggest to the court that there is no proof that this prosecution was vexatious, frivolous, or done... Pursued in bad faith. And therefore, I would urge the court to affirm the district court decision. Any other questions? Thank you very much. Thank you. Mr. Mahoney has reserved two minutes. I think that I addressed the standard review in my brief, but in the connection with that, the supposition that the judge evaluated the credibility of witnesses, Judge Scranton did not do that. Judge Scranton had not a word about the credibility of Hale's testimony. He avoided it. He refused to address the issue. But understanding the record, there was corroboration of Hale's testimony from Michael Mazur at trial. Am I right about that? Well, sort of. So here's what happened with Mazur, or Mazur, or whatever his name is. Originally, he says nothing to the police at the grand jury presentation. After Hale's testimony, he's pressed. Well, wasn't there something else that Mr. Beauvais said? He said, no, can't remember. Mazur has nothing at the grand jury. On direct, this is going to be a funny story. On direct, they don't address it with Mazur. Nothing about threats. I asked the question, one too many, because full of confidence of the way the record is, said to Mr. Mazur that, well, but Mr. Beauvais didn't threaten any property damage. So, well, yes, he did. Okay? So I opened that up, my big mouth, but I had in my pocket his prior statements. And he said, and I said that to the police back then. I called the police who came and testified. No, he didn't say that. And here's a report to prove it. So first of all, and by the way, that's after the trial begins. They didn't have that before the trial. So the good faith here has to do with not thinking. And so, and by the way, so then we have other things that come out. The government in their brief talks about Mr. Franz's testimony as being another thing that came out at the trial. And this is this completely collusive thing where this guy first tells them that, well, who's never said anything in four years prior to trial about Beauvais. On the last witness, the end of the trial comes up with saying, oh, yeah, Mr. Beauvais approached me about maybe doing some property, doing something at this excavation project, which he said meant sanding equipment, putting sand in the oil system. Two days later at trial, he says, Mr. Beauvais came and asked me if I would do night work, a phrase nobody had used, but it turned out there'd been an attempt by the labor, the Department of Labor lawyers who were also attending this trial where they used exactly the same phraseology as our indictment. And they, so somebody obviously fed that phrase, this sort of, making sort of coded criminal language, night work, to Franz who used that at trial. Bruce elicits it from him. And we said in our Hyde Amendment claim, in response to the government, that this was concocted, that somebody fed that to him to give elaboration and give some sort of credibility to this. The government never denied it, never said, no, that's not what happened. They never gave any explanation as to how Franz came up with this. So that's another thing that shows the bad faith here, concocting that evidence. And the government has offered not one word to defend that. Judge Scranton, he refused to address that. Mr. Mahoney, your time is up. I gave you some extra time, but I'm always anxious to enhance my vocabulary. So what is this night work supposed to mean? Okay. So, so he, he explains that night work meant damage to equipment, but which had never been used in the entire trial, but it was something that had been used in this Philadelphia case. It's a code like a one, one and a half shirts. Exactly. Except it had never been used here. It was just borrowed to enhance his testimony to embellish. And the government hasn't denied that. We'll reserve decision. Thank you both very much. Well argued. Much appreciated.